IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:11-CR-299 |
| | § | (2:14-CV-432) |
| AARON F. BROUSSARD. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255,
GRANTING CERTIFICATE OF APPEALABILITY AND
DENYING MOTION FOR DISCOVERY**

Before the Court is Aaron Broussard's motion to vacate, set aside or correct his

sentence pursuant to 28 U.S.C. § 2255 and his motion for discovery. D.E. 250, 271. The

government opposed both. D.E. 270, 273. The Court denies both motions, but grants him a

certificate of appealability.

## I.   JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND

### A.    Factual and Procedural Background

Aaron Broussard, the former president of Jefferson Parish, Louisiana, was indicted

in December 2011 for conspiracy to commit payroll fraud, wire fraud, and theft from

programs receiving federal funds, with his former wife Karen Parker and former parish

attorney Thomas Wilkinson. D.E. 1.[1] Broussard became parish president of Jefferson Parish

---

[1]   Count One, the conspiracy count, charged violations of 18 U.S.C. § 371. Counts Two
through Twenty-Eight charged wire fraud in violation of 18 U.S.C. § 1343. Counts Twenty-Nine
through Thirty-Three charged theft concerning programs receiving federal funds in violation of 18

in 2003, was re-elected in 2007 and remained in that position until he resigned in January 2010. Id. As parish president, Broussard was responsible for the administration and supervision of parish departments, offices, agencies and special districts. He hired Tom Wilkinson as parish attorney and with Wilkinson's help hired Parker, with whom he became romantically involved and later married. Parker was hired as a paralegal supervisor for the parish, a position for which she was in no way qualified and that she could not and did not perform. For Wilkinson's part, he signed off on Parker's raises and other personnel benefits, and in return, received substantial pay raises himself.

The indictment was superseded twice. The Second Superseding Indictment was issued as to Broussard and Wilkinson in July 2012 in which additional details were added to the conspiracy count, including allegations that Broussard received pay-offs from a company that sought to do business with Jefferson Parish. The new charge as to Broussard included bribery concerning programs receiving federal funds in Counts Two through Six. Broussard and Wilkinson were charged in Counts Seven through Twenty-Three with wire fraud. Both were also charged with theft concerning programs receiving federal funds in Counts Twenty-Four through Twenty-Seven. D.E. 117.[2]

---

U.S.C. §§ 666(a)(1)(A) and 2.

   [2]  The Second Superseding Indictment charged: Count One, conspiracy in violation of 18 U.S.C. § 371. Counts Two through Six charged bribery concerning programs receiving federal funds in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2. Counts Seven through Twenty-Three charged wire fraud in violation of 18 U.S.C. § 1343. Counts Twenty-Four through Twenty-Seven charged theft concerning programs receiving federal funds in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2.

Ultimately, in September 2012, Broussard pled guilty to Counts One and Twenty-Seven with a plea agreement in which he waived his right to appeal or to collaterally attack his judgment. D.E. 198. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Broussard was rearraigned and the Court[3] accepted his guilty plea on September 25, 2012. D.E. 202.

During rearraignment, the Court found that Broussard was competent, understood his right to counsel, was satisfied with the performance of counsel, and understood his trial rights, including his right to a trial by jury at which the government would have to prove all of the elements of the charges beyond a reasonable doubt. Brossard waived his right to trial and waived his right to silence. Id., pp. 8-9. The Court also found that Broussard understood the charges against him and the consequences of his guilty plea. Id., pp.10-18. The Court found Broussard's plea was knowing and voluntary and not the result of force, threat, or promise of leniency. Broussard testified it was his own decision to plead guilty because he was guilty. Id., p. 18. [4] The Court found that Broussard conferred with counsel regarding the

---

[3] The undersigned district judge was designated by Circuit Court Judge Edith Jones to hear the case following the recusal of all of the judges of the Eastern District of Louisiana. D.E. 4, 6.

[4]
3 THE COURT: I find the defendant understands the
4 charge and the consequence of a plea.
5 Has anyone threatened you or forced you to plead
6 guilty?
7 THE DEFENDANT: No, Your Honor.
8 THE COURT: Has anyone promised you leniency if you
9 would plead guilty?
10 THE DEFENDANT: No, Your Honor.
11 THE COURT: Who makes the decision for you to plead
12 guilty?
13 THE DEFENDANT: I make the decision, Your Honor.

plea agreement and understood the terms of the agreement, including his waivers of his right

to appeal or to collaterally attack his conviction or sentence.[5] The Court additionally found

that Broussard was not promised a specific sentence. Id., pp. 18-21. After consulting with

---

              14 THE COURT: Why are you pleading guilty?
              15 THE DEFENDANT: Because I am guilty, Your Honor.

Id.

[5]      10 THE COURT: That is especially true because you are
            11 giving up your right to appeal your sentence and your
            12 conviction and the fine and the restitution that can be ordered
            13 unless I sentence you -- I don't see any exceptions for that
            14 waiver of right of appeal.
            15 You're also giving up your right to file a 2255
            16 petition and other federal writs that would allow you to
            17 challenge your conviction or your sentence collaterally, that
            18 is, after they have become final, another request to the Court
            19 that the Court reconsider its decisions, but you're giving up
            20 your right to make those appeals.
            21 Now, I see at paragraph 7 you are retaining your
            22 right to appeal a sentence in excess of the statutory maximum.
            23 Of course, I would hope that you would retain such a right, but
            24 I would hope I would never commit such an error. You do have
            25 that right.
            1 If there is a circumstance under which you
            2 believe your attorneys have rendered ineffective assistance of
            3 counsel, you may still bring a postconviction challenge to your
            4 conviction and your sentence. Do you understand?
            5 THE DEFENDANT: Yes, Your Honor.
            6 THE COURT: Based on ineffective assistance of
            7 counsel and no other exception. Do you understand that?
            8 THE DEFENDANT: Yes, Your Honor.
                *      *      *      *
            4 Were you aware that the plea agreement requires
            5 you to give up your rights of appeal?
            6 THE DEFENDANT: Yes, Your Honor.
            7 THE COURT: You had discussed that with Mr. Jenkins?
            8 THE DEFENDANT: I sure did, Your Honor.

Id., pp. 20-21, 33.

4

counsel, Broussard agreed to the facts related to his crimes as set out by the government. There was factual basis for the Court's finding of guilt. Id., pp. 25-33. At no time since has Broussard attempted to withdraw his plea of guilty or assert his innocence of the charges.

After deciding various sentencing guideline issues favorably to Broussard, the Court sentenced him to 46 months on Count One and the same for Count Twenty-Seven on February 28, 2013. The sentences were to be served concurrently and to be followed by three years supervised release for each count to be served concurrently, a special assessment of $200.00, and restitution in the amount of $214,209.94. Additionally, Broussard was to forfeit $66,000. D.E. 237. He did not appeal, but timely filed the present motion.

## B.      Prosecutorial Ethical Breaches in the Eastern District of Louisiana

During Broussard's prosecution, the United States Attorney was investigating a variety of public corruption cases, some of which also implicated Broussard. During these various prosecutions, the misconduct of two attorneys in the U.S. Attorney's Office of the Eastern District was uncovered. It first came to light that Sal Perricone, senior litigation counsel in that office, was blogging anonymously on criminal justice matters, including cases prosecuted by the U.S. Attorney's Office. The blogging occurred on the newspaper internet site for the New Orleans Times-Picayune in the form of comments to various news articles regarding various criminal justice and political matters. Perricone's blogging under various pseudonyms was highly critical of the New Orleans Police Department, as well as Broussard

and a number of other high profile individuals who were being investigated by the U.S.

Attorney's Office.[6]

In March 2012, the U.S. Attorney announced that Perricone blogged anonymously.

Perricone then resigned. United States v. Mouton, 2013 WL 2455934 at *3 (E.D. La., June

5, 2013) (designated unpublished); United States v. Bowen, 969 F. Supp.2d 518, 521 n.4

(E.D. La. 2012).

---

[6]  Perricone's blogging on NOLA.com regarding Broussard extended back into 2008 after Broussard was reelected as Jefferson Parish president. In that position, Broussard was often in the news. Among Perricone's posts were:

"Broussard isn getting nuttier and nutier. He doesn't do anything for anybody unless there's something in it for him. Possibly future employment with the Shaw Group."
March 20, 2008. D.E. 205-3, p. 3.

"Broussard needs to resign. I hope the collective grief this man has visited upon the citizens of Jefferson Parish, this newspaper will demand his resignation NOW! . . .Broussard is a total failure as a leader and now he's a liar. He has exhausted his ability to lead and now his credibility to lead. He must go if there is to be a credible government in Jefferson Parish."
April, 16, 2008. D.E. 205-3, p. 3.

"I can't believe people giving anything to Broussard AFTER he resigned in disgrace. Don't these people have ANY common sense? It is NO mystery why we have so much tolerance for corruption in this state. This is sick and sad."
February 21, 2011. D.E. 205-3, p. 18.

"Only a complete idiot would allow himself to be persuade to do anything by another idiot named Aaron Broussard. ANYONE who signed off on that contract should never hold public office again–anywhere!"
December 3, 2011. D.E. 205-4, p. 11.

"What is the former president of white suburbia doing with a black Tulane and Broad lawyer? Now that's a story that should be explored."
January 18, 2012. D.E. 205-4, p. 20.

Eight months later, in November 2012, it was determined that First Assistant to the United States Attorney of the Eastern District, Jan Mann, posted online comments on the newspaper site, including comments about ongoing prosecutions. Mouton, 2013 WL 2455934 at *3; Bowen, 969 F. Supp.2d at 530. She was demoted immediately and resigned in December 2012. Mouton, 2013 WL 2455934 at *3. Jim Letten, the U.S. Attorney for the Eastern District also resigned in December 2012. Id.

Additional misconduct was discovered on the part of Karla Dobinski, a member of the Criminal Division of the Department of Justice Civil Rights Division, who worked on a prosecution involving members of the New Orleans Police Department. She too posted anonymously on the New Orleans website during the trial of the case on which she was assisting. Her misconduct was discovered in May 2013. United States v. Bowen, 969 F. Supp.2d 546, 616 (E.D. La. 2012).

## C.   Professional Misconduct Allegations in Broussard's Case

Following Broussard's indictment in December 2011, Broussard filed a pro se motion for formal inquiry alleging that the secrecy of the grand jury had been violated based upon media reports the day before the indictment was returned that Broussard's indictment was imminent. D.E. 9. Broussard supplemented his pro se motion to include additional reports from the media, including a report that target letters were sent to Broussard and his co-defendants less than a week after the letters had been delivered. D.E. 10. The Court dismissed the motion without prejudice after Broussard hired counsel. D.E. 28.

In May 2012, the Public Integrity Section of the Department of Justice took over several cases from the local U.S. Attorney's Office after Perricone's conduct was uncovered. D.E. 82. Broussard also sought recusal of the United States Attorney for the Eastern District of Louisiana based upon the revelation that the Senior Litigation Counsel posted opinions on the newspaper website anonymously regarding matters before the U.S. Attorney's office. Broussard also claimed that a member of the Eastern District's office leaked grand jury materials and information. D.E. 83.

The government responded and additional briefing was done by all parties. D.E. 94, 100, 110, 112. The Court denied Broussard's motion for an evidentiary hearing, but instead ordered the United States to file, under seal, for the Court's inspection the results of the investigation conducted by the United States Attorney for the Eastern District. D.E. 113.

Jan Mann, the First Assistant to the U.S. Attorney, signed the report of internal investigation in which she claimed that Sal Perricone had no supervisory responsibilities in the Broussard case. According to Mann's report, the internal investigation revealed no other bloggers or any knowledge of Perricone's blogging within the office, found no leaks of grand jury information, and argued the Office should not be recused. D.E. 204-1. After reviewing the sealed report by Mann,[7] the Court denied the motion to recuse the United States Attorney for the Eastern District of Louisiana in July 2012. D.E. 115. The Court later learned that Mann's report of the U.S. Attorney's Office internal investigation was demonstrably false because it omitted any mention of her own blogging.

---

[7]   The Court unsealed that report in December 2012. D.E. 204-1.

Broussard filed a motion for a change of venue on the ground that pretrial publicity would prevent a fair trial and argued that prejudice should be presumed. D.E. 150.[8] The government opposed the request. D.E. 157. Broussard pled guilty before the Court was scheduled to hear argument on the motion.

_____

[8] The filing of motions in this case, additional attorneys enrolling on behalf of Mr. Broussard and basically any and all aspects of this case are have received intense media coverage in the local area. Due to the intense media scrutiny this case has undergone Mr. Broussard's right to a trial by indifferent jurors free from outside influence who will base their decision solely on the evidence has been violated.

     \*   \*   \*   \*

The local media coverage of this case has been intense. The media converges and assembles outside of the courthouse every time there is any appearance made by Mr. Broussard or even his legal counsels. On August 22, 2012, counsel for Mr. Broussard filed a motion seeking to dismiss the multi count indictment in this matter. The filing of a motion was one of the lead stories on the 10:00 p.m., news on WDSU television later the same evening.

*A review of nola.com a local news website indicates that there are approximately 33,400 items on the website relating to Aaron Broussard. Readers can post comments that follow the story.* A review of the comments shows that aside from the intense media coverage of this case, many citizens feel Mr. Broussard is responsible for not keeping the pumps going during Hurricane Katrina which they argue resulted in widespread flooding in Jefferson Parish. The shows a public bias against Mr. Broussard, created largely by the media that goes back to Hurricane Katrina in 2005. As well as a bias against Mr. Broussard because the media on numerous occasions has labeled him just another corrupt politician.

For example an editorial by Stephanie Grace of the Times Picayune was published on nola.com on March 15, 2011, entitled "Aaron Broussard is happy to spend your money." Ms. Grace opines this as a "lifelong politician who seems to have no qualms about doing whatever he feels like doing, whether it's abusing his position or simply cracking an elaborate joke. As long as someone else is picking up the tab." nola.com, March 15, 2011.

Id., pp. 2, 5-6 (emphasis added).

In late November 2012, two months after Broussard pled guilty, Jim Letten, the United States Attorney for the Eastern District of Louisiana advised the Court of the following:

> Last week, as a result of a civil lawsuit filed by an individual named Frederick Heebe, our office learned that Assistant U.S. Attorney Jan Mann had also posted several anonymous comments on the website nola.com (the same one utilized by former AUSA Perricone), including at least one involving this case. AUSA Mann had been doing so for some four to five months prior to AUSA Perricone's resignation in March 2012. AUSA Mann did not disclose in her July 2, 2012 response to this Court that she also had posted comments involving this matter. While we cannot retrieve the entirety of Ms. Mann's postings from nola.com, the one comment involving this matter that was alleged in Mr. Heebe's civil pleading is as follows:
>
>> In response to a December 2, 2011 news story announcing the original indictment involving the defendants here, poster "eweman" wrote:
>>
>> They have been accused of stealing hundreds of thousands of our dollars and are charged with felonies galore. It sound like a couple of you out there think that won't land em in the pen. Haven't you been paying attention? You take the king down for anything you got him on. A1 Capone went to jail for taxes, remember?
>
> AUSA Mann posted on nola.com under the name "eweman." As a result, she was immediately removed as First Assistant U.S. Attorney and Criminal Chief and the matter was referred to the Department of Justice's Office of Professional Responsibility (OPR) in Washington, D.C. in accordance with the provisions of the United States Attorney's Manual. The matter is presently under investigation by OPR.

D.E. 204.

The Court convened a telephone conference with the parties to discuss the government's filing. D.E. 211. Although the letter was filed ex parte, the Court ordered that

it be unsealed and that Broussard respond. D.E. 203. Letten's letter cast doubt on the investigation described by Mann in her submission in June 2012 in response to Broussard's motion to recuse the United States Attorney for the Eastern District.

Broussard filed a motion for an evidentiary hearing to determine the extent of the government's prosecutorial misconduct. D.E. 205. The government responded and objected to the relief sought, deeming the motion a "fishing expedition." After briefing by the parties, the Court denied the motion in January 2013 stating in part,

> Defendant Broussard's requests for recusal of the United States Attorney for the Eastern District of Louisiana and his office based on prosecutorial misconduct and Grand Jury leaks have previously been rejected by this Court. Defendant Broussard's motion for recusal at this stage in the proceedings of the case is also denied. In the first instance, he has waived such alleged defects by pleading guilty to conspiracy and theft and by admitting the criminal facts underlying these convictions. In the second instance, Defendant Broussard essentially received the recusal relief sought. Blogger Salvador Perricone has resigned and blogger Jan Mann has been demoted. The former United States Attorney Jim Letten has resigned and been replaced.
>
> The Court similarly rejects Defendant Broussard's request for an evidentiary hearing to determine the extent of alleged prosecutorial misconduct that may have occurred during his investigation and criminal prosecution. "A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction." United States v. Cothran, 302 F.3d 279, 285-86 (5th Cir. 2002) (quotation marks omitted); see also Tollett v. Henderson, 4111 U.S. 258, 267 (1973); United States v. Owens, 996 F.2d 59, 60 (5th Cir. 1993); United States v. Bell, 966 F.2d 914, 915 (5th Cir. 1992). This includes, but is not limited to, waiver of "claims of governmental misconduct during the investigation and improper motives for prosecution." Cothran, 302 F.3d at 286.

D.E. 218. The Court noted at that time that Broussard did not seek to have the indictment against him dismissed nor did he request to withdraw his guilty plea. The Court denied the motion in January 2013.  Id. It is against this backdrop Broussard filed his § 2255 motion.

### III.   MOVANT'S CLAIMS

Broussard brings the single claim that his attorney Robert Jenkins provided ineffective assistance of counsel "due in large part to the insurmountable interference" of the U.S. Attorney's office for the Eastern District of Louisiana, the Department of Justice, and Section "N" of the Eastern District. As a result of that interference, Broussard claims that counsel violated his Sixth Amendment duty to "keep the defendant informed of important developments in the course of the prosecution." D.E. 250-1, pp. 3-4. Broussard now claims his plea was not voluntary on the grounds that his attorney was prevented from learning of prosecutorial misconduct and was thereby unable to properly advise Broussard of his options.

### IV.   ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range

of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

Furthermore, a defendant may not raise an issue for the first time on collateral review without first showing "cause" for the procedural default, and "actual prejudice" resulting from the error. United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). The "cause and prejudice" standard presents a "significantly higher hurdle" than the plain error standard applied on direct appeal. United States v. Frady, 456 U.S. 152, 166 (1982). "[A] collateral challenge may not do service for an appeal." Id. at 165.

B.      **Standard for Claims of Ineffective Assistance of Counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment.

Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C.    Alleged Ineffective Assistance of Counsel

Broussard claims that the full extent of the misconduct of the members of the United States Attorney's Office in the Eastern District, including that of high level supervisory attorneys, was withheld from his counsel before he pled guilty. Broussard's lead trial counsel, Robert Jenkins, provided an affidavit in which counsel attests in part,

> Over the course of [my] representation [of Aaron Broussard], I filed multiple motions related to the misconduct I suspected in the local U.S. Attorney's Office at that time. A great deal of information related to that misconduct has since become publicly available, but the government withheld this information from me throughout my client's prosecution and sentencing. The government's withholding of this highly relevant information directly interfered with my ability to advise Mr. Broussard of important information related to his prosecution and the relevant circumstances surrounding his guilty plea, and to make independent decisions about how to conduct Mr. Broussard's defense.

D.E. 250-2.

Defense counsel is charged with many duties in the representation of a criminal defendant, including the duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."

14

Strickland, 466 U.S. at 688. Broussard does not claim any failure by counsel to advise him *other than* relating to information that was kept from counsel by the government. In Broussard's case, the Court finds no deficient conduct and no prejudice on his sole claim.

> 1. *Broussard's plea agreement*

Broussard's guilty plea included a waiver of his right to appeal or to file post-conviction motions, including those pursuant to 28 U.S.C. § 2255. D.E. 198. In exchange for Broussard's guilty plea and waiver of the right to appeal or file certain post-conviction motions, the Government agreed to recommend maximum credit for acceptance of responsibility and to dismiss the remaining twenty-five counts against Broussard. D.E. 198, p. 1.

The applicable waiver paragraphs in the plea agreement recite:

> Acknowledging these rights, subject only to the exception noted in subsection (d) below, the defendant, in exchange for the promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily:

> c. Waives and gives up his right to challenge his sentence collaterally, including but not limited to any and all rights that arise under Title 28, United States Code, Sections 2255 and 2241, Rule 60 of the Federal Rules of Civil Procedure, Rule 36 of the Federal Rules of criminal Procedure, writs of coram nobis and audita querela, and any other collateral challenges to his sentence of any kind; and

> d. The defendant specifically does not waive, and retains the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum. The defendant also *retains the right to bring a post conviction challenge if he establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself.*

Id., pp. 2-3 (emphasis added).

Based upon the terms of the plea agreement, Broussard may proceed in his motion only insofar as "he establishes ineffective assistance of counsel that directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself." Broussard does not claim that his waiver was involuntary, only that his plea of guilty was involuntary.

2.      *Was counsel's failure to communicate information ineffective performance of duty?*

Broussard claims that at the time he was contemplating a guilty plea in September 2012 he did not know of prosecutorial misconduct by First Assistant Jan Mann or others. Counsel claims if he had known, he would not have advised Broussard to plead guilty, or counsel would have pressed the government and the Court to allow Broussard to enter an Alford plea.[9] Counsel further argues Broussard's guilty plea was involuntary due to his lack of information about prosecutorial misconduct at the time of his plea.

One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty. United States v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005). Counsel "fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea." Id.; Strickland, 466 U.S. at 688; United States v. Moore, 416 Fed. App'x. 454, 458-59 (5th Cir., Mar. 4, 2011)

---

[9]   An Alford plea allows a defendant to plead guilty while maintaining his factual innocence. North Carolina v. Alford, 400 U.S. 25, 37 (1970).  "Our circuit has previously observed that this type of plea is 'counter-intuitive' and 'may prove confusing to some defendants.'" United States v. Flores-Vasquez, 641 F.3d 667, 671 n.3 (5th Cir. 2011).

(per curiam) (designated unpublished) ("a defendant cannot intelligently choose whether to accept a plea if he lacks a full understanding of the risks of going to trial."). "[I]f a defendant is represented by counsel and pleads guilty upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Armstead, 37 F.3d at 206.

Although the Strickland test applies to ineffective assistance claims involving guilty pleas, the prejudice prong of the test differs. To "satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1984); Magnum v. Hargett, 67 F.3d 80, 84 (5th Cir. 1995); United States v. Ortega, 2013 WL 6002137 at *4 (S.D. Tex., Nov. 12, 2013).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and *to evaluate the conduct from counsel's perspective at the time*. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 689 (emphasis added). "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id. at 690.

"When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." United States v. Ruiz, 536 U.S. 622, 628 (U.S. 2002). "[T]he Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences.'" Id. at 629 (internal citations and quotations omitted). Recognizing that at the guilty plea, the defendant does not have perfect knowledge of the government's case, the law ordinarily considers a waiver of trial rights to be "knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the specific detailed consequences of invoking it." Id.

The Constitution "does not require [a defendant to have] complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." Id.

Broussard and his counsel knew of the blogging activity of Sal Perricone in the U.S. Attorney's office and had known of it for five months at the time Broussard pled guilty. Counsel claims that his advice would have been different had he known the full extent of the government's misconduct, primarily Mann's deceptions, that his bargaining position would have been better and he might have convinced the government and the Court to accept an Alford plea. Notably counsel does not claim that Broussard would have gone to trial.

18

At the time of his guilty plea, Broussard was faced with the earlier guilty pleas of Karen Parker and Thomas Wilkinson, as well as the guilty pleas of William P. Mack and Timothy Whitmer, other persons involved in the payroll and bribery conspiracy who were charged separately.[10] Based upon the pleas of Parker and Wilkinson to misprision of a felony charges, it was apparent that they were going to assist the government in its prosecution of Broussard. Their plea agreements require them to submit to interviews with law enforcement any time requested and to "appear before any Grand Jury or trial jury and to testify truthfully." D.E. 45, p. 3, D.E. 192, pp. 3-4. The proceedings against Whitmer and Mack also indicated that they likely were going to assist the government in its prosecution of Broussard.

Broussard does not now claim that he did not understand the charges against him or the consequences of his guilty plea. He does not claim that trial evidence was withheld, discovery denied[11] or there were significant procedural errors in the conduct of the case

---

[10] Tim Whitmer, Broussard's Chief Administrative Officer for Jefferson Parish pled guilty to misprision of a felony in March 2012 after waiving indictment in Cause NO. 2:12-CR-46, D.E. 9, 18. The factual basis of his guilty plea included substantial allegations regarding the payroll fraud based upon Broussard's participation in the hiring of Karen Parker and Broussard's conduct in rewarding Wilkins for his participation and other favors for Broussard by substantial pay raises. D.E. 17. Whitmer was sentenced to a three year term of probation. D.E. 34.

William P. Mack, the contractor who paid Broussard kickbacks, pled guilty to conspiracy to commit bribery concerning programs receiving federal funds in August 2012, pursuant to a plea agreement with the government, after waiving indictment in Cause No. 2:12-CR-239, D.E. 7, 15. His factual basis admitted that Mack began paying Broussard $1500 per month in 2002 in exchange for Broussard's official acts to steer telecommunications work to Mack's company. D.E. 16. Mack was ultimately sentenced to 20 months in the Bureau of Prisons. D.E. 37.

[11] Broussard's attorneys affirmatively advised the Court that they had received discovery from the government and the government advised what it had done periodically regarding discovery. D.E. 60, pp. 5-6, D.E. 65. "THE COURT: And is the Defense receiving the discovery that it needs? MR. JENKINS: Yes, Your Honor, we are." D.E. 60, p. 6.

against him in Court. This Court finds that the revelation that Jan Mann had blogged about Broussard on several occasions could add little to Broussard's underlying decision regarding a guilty plea.

Counsel was not constitutionally ineffective for his failure to discover information regarding proof of ethical breaches that the government intentionally withheld from both the defense and from this Court. Counsel's conduct is measured against the standard of reasonably effective assistance based upon the information available to counsel at the time. Strickland, 466 U.S. at 690. The Court finds that counsel's failure to communicate to his client information that he did not and could not have known at the time based upon reasonable diligence, did not constitute ineffective professional assistance and did not fatally taint the voluntariness of Broussard's guilty plea. Additionally, Broussard has not established any harm from counsel's alleged deficiencies. Broussard's claim of ineffective assistance is DENIED.

## D.      Prosecutorial Misconduct Can be a Due Process Violation

Several investigations have been done into the misconduct of the attorneys in the Eastern District of Louisiana. These investigations implicate Jan Mann and Sal Perricone in violations of their professional duties as attorneys[12] and as members of the Department of

---

[12]  Based upon the record before this Court, AUSA Mann likely violated the Louisiana Rules of Professional Conduct as follows:

Rule 3.3 Candor Towards the Tribunal prohibits a lawyer from knowingly making a false statement of fact to a tribunal and requires counsel to correct a previous false statement of material fact or law to the tribunal.

Justice. <u>See</u> <u>Bowen</u>, 969 F. Supp.2d at 577-619; <u>United States v. Jackson</u>, 2014 WL 2158434

(E.D. La., May 23, 2014); <u>United States v. McRae</u>, 2014 WL 2468559 (E.D. La., June 2,

2014).

"To constitute a due process violation, prosecutorial misconduct must be of sufficient

significance to result in the denial of the defendant's right to a fair trial." <u>Greer v. Miller</u>, 483

U.S. 756, 765 (U.S. 1987). "[A]n accused can be denied due process of law because

extraneous considerations render improbable or impossible an impartial judgment as to guilt,

wholly apart from defense counsel's ineffectiveness in preventing the prejudice." <u>Menzies</u>

---

Rule 3.4 Fairness to Opposing Party and Counsel prohibits a lawyer from knowingly disobeying an obligation under the rules of the tribunal. In this case, the Local Rules of the Eastern District incorporate the Louisiana Rules of Professional Conduct.

Rule 3.8 Special Responsibilities of a Prosecutor which prohibits a prosecutor from making extrajudicial statements,

> except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule.

Rule 8.4 Misconduct states that it is professional misconduct to violate the Rules of Professional Conduct, to engage in conduct involving misrepresentation and to engage in conduct that is prejudicial to the administration of justice.

Louisiana Rules of Profession Conduct (found on the website of the Louisiana Supreme Court at http://www.ladb.org/Resources/Publications/. Last reviewed July 11, 2014.

v. Procunier, 743 F.2d 281, 289 (5th Cir. 1984); see also Gonzales v. Thaler, 643 F.3d 425, 431 (5th Cir. 2011) (collecting cases discussing due process violations). In other cases, an accused may be "denied due process precisely because the extraneous considerations effectively crippled the ability of the Defendant's lawyer to present his defense." Procunier, 743 F.2d at 289.

The conduct in Broussard involved commenting on a news website regarding articles published by the Times-Picayune on that site *before* Broussard pled guilty. Unlike in the Bowen case, the prosecutorial misconduct here did not implicate grand jury misconduct, false testimony, or potential poisoning of the jury pool and the jury during trial. See Bowen, 969 F. Supp.2d at 608-23.

Although the prosecutorial misconduct in Broussard's case could rise to the level of a due process violation in some instances, Broussard waived his right to assert such a violation by his guilty plea. A guilty plea by itself waives all nonjurisdictional defects, including claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. Haring v. Prosise, 462 U.S. 306, (1983) ("an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty."); United States v. Cothran, 302 F.3d 279, 285–86 (5th Cir. 2002); Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5th Cir. 1981). Significantly, "[t]he [guilty] plea waives claims of governmental misconduct during the investigation and improper motives for prosecution." Cothran, 302 F.3d at 286. As a result, Broussard may not assert that claim. Additionally, his plea agreement precludes this

claim–the Court may only consider claims for which Broussard can establish ineffective assistance of counsel that affected the voluntariness of his plea.

Broussard did not seek to withdraw his plea in the light of the new disclosures in November 2012. Instead, all he requested was a wide-ranging evidentiary exploration into possible misconduct outside of the areas already known. Although Broussard wanted to explore potential prosecutorial vindictiveness and improper motive, he waived those avenues when he pled guilty. The information available to the Court indicated that Broussard did not appear to be unfairly singled out. Numerous public corruption cases were pursued by the United States Attorney at the same time Broussard was prosecuted. Additionally, Broussard clearly admitted to the conduct supporting the charges to which he pled guilty. Under these circumstances, the Court denies Broussard's motion to vacate, set aside or vacate sentence.

## E.   Motion for Discovery

Broussard seeks discovery of the Department of Justice Office of Profession Responsibility Report (OPR) on prosecutorial misconduct. D.E. 271. He argues basic fairness in that the government relied on that report in its response to Broussard's § 2255 motion. Broussard further argues that the order denying discovery of the OPR report in <u>Jackson</u>, specifically references prosecutorial misconduct in this case.

It can be taken as a given that there were ethical breaches in this case. Jan Mann blogged about this case while involved in the prosecution of Broussard. She concealed her conduct from the government, this Court and defense counsel. By defense counsel's estimation, there were over 33,000 mentions of Broussard on nola.com at the time he filed

the motion to transfer venue. In the universe of public comment regarding Broussard, only a few comments were placed by Mann. Knowing the full extent of blogging activity by attorneys in the prosecuting office and the extent of the knowledge, if any, by Jim Letten, does not shed any light on whether Broussard entered a knowing and voluntary plea. He was represented aggressively by multiple competent lawyers. Broussard is not entitled to discovery of a report designed to determine the extent of wrongdoing and the applicable sanction of persons engaged in wrongdoing by the Office of Professional Responsibility at this stage. The discovery sought is unnecessary to the resolution of this § 2255 proceeding.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Broussard has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

Appellate review of this case would be beneficial. The Court GRANTS Broussard a certificate of appealability on his claim that counsel was ineffective for failing to communicate information the government withheld from the Court and defense and counsel's inability to communicate that information precluded a voluntary guilty plea.

24

## V.  CONCLUSION

The Court DENIES Broussard's motion to vacate, set aside or correct judgment (D.E. 250). The Court GRANTS Broussard a COA on his single issue, and DENIES Broussard's motion for discovery (D.E. 271).

It is so ORDERED this 11th day of July 2014.

Hayden Head

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE